[No. 15784-1-I. Division One. December 29, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES D. JACKSON, *Appellant.*

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ray McFarland, Deputy,* for respondent.

RINGOLD, J.—The defendant James Jackson was found guilty by a jury of first degree statutory rape. He appeals the judgment and sentence, arguing that the trial court erred by excluding two defense witnesses who would have testified that Jackson had a reputation for good moral character and truthfulness. Jackson also asserts that the trial court erred by allowing two state witnesses to relate out–of–court statements by the victim. We reverse, holding that the reliability of the hearsay statements was not established.

James Jackson began living with the victim, a 5–year–old girl, and her mother in July 1982. Jackson lived with them for less than a year. Jackson and the victim's mother had violent arguments and separated with much animosity toward each other.

While the three were still living together, the victim told her mother that Jackson had "stuck his finger in my butt." The victim's mother responded, "Well, he'd better not have, . . . Did he really?". The victim laughed and replied, "No."

The next time the victim complained was in March 1984. The victim, her mother, and Margaret Schuyler, a friend of the family, were having dinner at a restaurant when the victim related that Jackson had sexual contact with her.

On May 18, 1984, Jackson was charged with first degree statutory rape. At trial the victim testified that Jackson had put his finger up her anus and had licked her genitalia.[1] The victim's mother and Schuyler also testified, over a hearsay objection by defense counsel, concerning what the victim had told them. No other evidence was presented by the State.

---

[1] The victim actually used more childish terms.

During opening statements the defense counsel stated:

There are going to be two other people who testify, we expect to testify, two people who are character witnesses for Mr. Jackson, and those character witnesses consist of his ex-wife, to whom he was married for five years and with whom he has a six-year old son as a byproduct of that marriage.

You are going to hear testimony also from a woman who he had a relationship with, a lovers live-in relationship with subsequent to his marriage, Donna Nixon, with whom his relationship lasted a year and a half. Donna Nixon is the mother of his five-year-old daughter. Both of those people will be character witnesses to James Jackson.

At the close of the State's case, however, the trial court granted the State's motion to exclude these witnesses. After Jackson testified in his defense, his counsel again asked the court to allow the character witnesses to testify. The trial court maintained its earlier ruling, and excluded the witnesses.

### CHARACTER WITNESSES

Jackson argues that under ER 608 he should have been allowed to present character evidence of his reputation for truthfulness, because his credibility was attacked on cross examination and by state witnesses. ER 608(a) states:

(a) . . . The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

"Under ER 608(a), only after the defendant becomes a witness and his character for truthfulness is attacked by reputation evidence or otherwise can he rebut the attack with evidence of his good reputation for truthfulness." *State v. Deach*, 40 Wn. App. 614, 618, 699 P.2d 811 (1985). The State did not attack Jackson's character with reputation evidence. It is more difficult to ascertain

whether Jackson's character was "otherwise" attacked. One approach is to determine whether the State has impeached the defendant by contradiction, self–contradiction, bias, interest, or corruption, thereby bringing into question the defendant's reputation for truthfulness. *State v. Harper,* 35 Wn. App. 855, 860–61, 670 P.2d 296 (1983) (quoting 4 J. Wigmore, *Evidence* § 1104, at 235 (rev. 1972)), *review denied,* 100 Wn.2d 1035 (1984).

> Mere contradiction of the witness is generally insufficient. A witness subjected to what McCormick aptly calls "slashing cross–examination" may or may not be permitted to introduce evidence of good reputation, depending on the facts and circumstances of the individual case. Impeachment by prior inconsistent statement likewise may or may not justify the introduction of evidence of good reputation, depending upon whether the impeachment constituted a general attack on the witness's character, or whether it merely implied a lack of memory or mistake.

(Footnotes omitted.) 5 K. Tegland, Wash. Prac., *Evidence* § 233, at 494–95 (2d ed. 1982).

 The trial judge should retain the discretion to permit the use of character witnesses under ER 608(a). *United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36, 40 (2d Cir. 1978), *cert. denied,* 439 U.S. 1130, 59 L. Ed. 2d 91, 99 S. Ct. 1049 (1979).[2] "His proximity to the situation allows him to make the determination of when, and by whom, an attack is made." *Medical Therapy Sciences, Inc.,* at 40.

The victim's mother testified that Jackson said he would deny any allegation of sexual contact with the victim. During the State's cross examination of Jackson, the State emphasized that testimony by asking, "And isn't it true that you said at the time she confronted you that you would deny that if it ever came to court?". Jackson admits

---

[2]In *Beard v. Mitchell,* 604 F.2d 485, 503 (7th Cir. 1979) the court held that the trial court did not abuse its discretion by allowing a party to call character witnesses to testify after the adverse party had used prior inconsistent statements to impeach a witness.

that this questioning did not rise to the level of a "slashing cross–examination." Jackson contends, however, that coupled with the testimony that he would deny any charges against him, it raises an issue concerning his credibility and character for truthfulness.

The trial court reasoned: "The evidence that the child told her mother that she didn't tell before was because the defendant said he would deny doing it. That is not a character sort of attack." The trial court had a tenable ground upon which it concluded that Jackson's character for truthfulness had not been attacked. Thus, the trial court did not abuse its discretion. *See State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Next, Jackson argues that he should have been allowed, under ER 404(a)(1), to have character witnesses testify concerning his reputation for sexual morality and decency.[3] ER 404(a)(1) states:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same . . .

■ The State's only response is that Jackson failed to make a proper offer of proof before the trial court and thus may not argue this issue on appeal. Jackson, however, properly apprised the trial court of his theory and gave a sufficient indication of what his witnesses' testimony would be. Jackson's counsel stated:

> The second position of the defense, Your Honor, concerning the two character witnesses, the testimony would not be their own personal opinion that he did not molest or abuse their own children, but rather they would testify

---

[3]At trial, Jackson also contended that under ER 404(a)(1) he was entitled to have character witnesses testify concerning his reputation for truthfulness. Jackson appropriately abandoned this claim on appeal. A defendant's character trait for truthfulness is not a pertinent trait to the charge of statutory rape. *See State v. Harper, supra.*

to two things phrased as follows, the reputation in the community of Mr. Jackson for not being predisposed to molesting children. His reputation in the community for not molesting children is good, and that he does not molest children according to the reputation that they are aware of.

Secondly, his reputation in the community for not spending an inordinate amount of time in the company of children of ages less than ten, and that reputation in the community that he does not spend an inordinate amount of time with children in the community who are less than the age of ten is good.

The reason that this is offered in this way is that opinion testimony is not permitted under Rule 4.02, reputation testimony is. I'm asserting to the Court that this is a pertinent trait of his character, this is necessary to rebut the nature of the charge against him because the nature of the charge against him is one of sexually abusing a small child under the age of ten, and the reputation evidence that we're offering for it is such it is a specific trait of his character that he does not have a predisposition to molesting children, and secondarily does not—there is a specific trait of his character that he does not spend an inordinate amount of time with children less than ten years old.

Whether a person spends an inordinate amount of time with children under 10 is not probative here. ER 402. Dicta in *Harper,* at 859–60, suggests that sexual morality and decency is the specific trait pertinent to the charge of indecent liberties. We doubt the validity of this assertion. The crimes of indecent liberties and incest concern sexual activity, which is normally an intimate, private affair not known to the community. One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct. Simply put, one's reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest. The trial court properly refused to permit Jackson's witnesses to testify concerning his reputation for sexual morality and decency.

## HEARSAY STATEMENTS

Jackson contends that the trial court failed to find that

the victim's hearsay statements were reliable as required by RCW 9A.44.120 before they were admitted. The State responds that Jackson failed to object with specificity at trial. The State also argues that the trial court did not need to find that the statements bore indicia of reliability as required by *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), because the victim testified and Jackson's confrontation rights were not implicated.

Former RCW 9A.44.120[4] applicable at the time of trial states in relevant part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

At trial, Jackson's counsel made a hearsay objection to the victim's mother recounting what the victim had told her at the restaurant. Following the testimony of the victim's mother, but before Schuyler testified, defense counsel requested a side–bar conference which was not transcribed. After the close of evidence, the court put the side–bar conference on the record. Defense counsel stated:

It is the position of the defense that notwithstanding the statutory exception of hearsay for children who are the subject of child abuse, given a certain age of those children, notwithstanding that statutory exception, the accounts of conversations given in testimony by Mrs.

---

[4]RCW 9A.44.120 was amended by Laws of 1985, ch. 404, § 1, to make them applicable to dependency proceedings under RCW Title 12 as well as criminal trials.

Schuyler and the victim's mother are improperly admitted as hearsay statements.

This objection is sufficient to alert the trial court that it must find the requisites of RCW 9A.44.120 before admitting the statements under this statutory exception to the hearsay rule.[5]

Jackson argues that the trial court failed to determine the reliability of the hearsay statements as required by the statute. The Supreme Court has set forth several factors that a trial court must consider before finding that a victim's out–of–court statement is reliable:

Those factors are: "(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness." . . . [T]hese factors . . . should be considered with the additional factors in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970): (1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*State v. Ryan, supra* at 175–76.

■ The State argues that these factors are inapplicable here, because Jackson's confrontation rights are not implicated. The State mistakenly limits the holding in *Ryan.* While in *Ryan* the victim did not testify, indicia of reliability are required before any statement may be admitted under RCW 9A.44.120, whether the victim testifies or not. RCW 9A.44.120(1); *see also State v. Jackson,* 42 Wn. App. 393, 711 P.2d 1086 (1985). With the exception of the second

---

[5]The issue raised on appeal is not of constitutional magnitude. The State correctly points out that the victim was found competent, testified, and was cross–examined. Thus, under the circumstances here, there was no confrontation clause violation. *See State v. Fisher,* 43 Wn. App. 75, 78, 715 P.2d 530 (1986).

*Dutton* factor relating to cross examination, the factors listed in *Ryan* are applicable here.

The trial court in admitting the statements ruled:

> I think that the statute clearly was intended to allow the statements of the child before a jury because of the fragile memory that a child has, and its limited ability to express itself. Therefore, I feel that the statute allows the testimony, and in balance with the context in which that was offered, I think it is appropriately admissible by that special statute.

This ruling does not reflect that the trial court found that "the time, content, and circumstances of the statement provide sufficient indicia of reliability . . ." RCW 9A.44-.120.[6]

"Adequate indicia of reliability must be found in reference to circumstances surrounding the making of the out–of–court statement . . ." *Ryan,* at 174. Applying the factors from *Ryan* to the record before this court is inconclusive.

Several factors show the victim's statements may be unreliable. First, the victim had an apparent motive to lie. Her mother and Jackson had an acrimonious separation, and Jackson alleged that the victim naturally sided with her mother. Second, it is difficult for this court to ascertain the general character of the victim from the written record on appeal. Third, the victim's statements contained an assertion about a past fact. Fourth, the statements objected

---

[6]*Ryan* held that the trial court must determine whether the child was competent at the time the statements were made, unless the statements were res gestae utterances. *Ryan,* at 174. Here the statements were made almost a year and a half after the alleged rape, thus they are not res gestae utterances. While the trial court found that the victim was competent on September 17, 1984, the day of trial, there was no finding that the child was competent in March 1984 when the statements were made. The child, born April 17, 1977, turned 7 years old between the time she made the statements at the restaurant and the time of trial. At this young age, the finding of competency at trial may not be sufficient to support a conclusion by this court that the child was competent 7 months earlier when she was at the restaurant. If the child was not competent, her statements are inherently unreliable. *Ryan,* at 174. On retrial, the trial court must determine the child's competency to be a witness at trial and her competency at the time the statements were made.

to were made one and a half years after Jackson stopped living with the victim.[7]

Two factors indicate the statements were reliable: (1) The statements were heard by more than one person. (2) The statements were made spontaneously. Reliability may also be supported because the victim's testimony was consistent with her earlier statements and she was subject to cross examination. *But cf. Ryan,* at 174.

The trial court did not find that the victim's out-of-court statements were reliable, and the record on appeal does not demonstrate their reliability. It was error to admit the statements without finding the requisite indicia of reliability, and reversal is required. *See* RCW 9A.44.120; *Ryan.*

The judgment is reversed and cause remanded for a new trial consistent with this opinion.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Reconsideration denied February 27, 1987.

---

[7]The victim's mother testified without objection that while Jackson lived with her and her daughter, her daughter said Jackson had stuck his finger up her anus. She also testified without objection that when asked if that were true the victim laughingly said "No."