[No. 18152–1–I. Division One. September 21, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT K. LEAVITT, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Hogan, Deputy,* for respondent.

SCHOLFIELD, C.J.—Robert Leavitt appeals his conviction for statutory rape in the first degree and indecent liberties.

## FACTS

Leavitt was charged by information with statutory rape and indecent liberties upon his niece, Colleen Vance. At the time of the alleged occurrence in 1985, Colleen, age 6, was in foster placement with Susanne Conway, a relative. Leavitt lived with his wife and two daughters in the same apartment complex as Conway.

Over the Fourth of July weekend in 1985, Colleen stayed with Leavitt and his family while Conway went camping. Although Colleen affectionately embraced Leavitt when

Conway returned to pick her up, after Colleen and Conway returned home Colleen told Conway that Uncle Robert was hurting her. Colleen appeared frightened at that time, but she did not go into further detail about what was bothering her.

The next day Colleen called her mother, Michelle Austin, and said, "Mom, I need to talk to you about Uncle Robert." The day following the phone call, Colleen went for an overnight visit with her mother. She made several attempts to talk with her mother, and mentioned that her "bottom hurt", but it wasn't until Colleen balked at returning to Conway's home that Austin talked with Colleen. According to Austin, Colleen appeared quite nervous and wanted to talk in the privacy of the bedroom. As a result of this mother–daughter conversation, Colleen was taken to the Sexual Assault Center.

During Colleen's counseling sessions with Debra Doane, a social worker at the Sexual Assault Center, the child acknowledged that Uncle Robert made her take her clothes off and that he had removed his own clothing in his bedroom. With the use of anatomically correct dolls, Colleen told Doane that Uncle Robert tried to put his erect penis inside her vagina, turned her over and positioned himself on his knees, attempted to place his penis into her anus, and that he put his penis into her mouth.

A pretrial hearing was held to deal with the questions of Colleen's competency to testify and the admissibility of her statements to Doane under the child hearsay statute. Colleen initially testified to her name and its spelling, her age, her attendance at school, and was able to distinguish between telling the truth and telling a lie. Colleen was quite reluctant to testify at the hearing, however, and although she would state that her Uncle Robert had touched her in a place she didn't like, while she was in his bedroom in his house, she appeared unwilling to testify further to the details of the allegations.

At that time, the trial court made reference to the requirements of *State v. Allen,* 70 Wn.2d 690, 424 P.2d

1021 (1967), stating that Colleen's mental capacity to receive an accurate impression of the event had not been shown, nor had it been shown that the child had a memory sufficient to retain an independent recollection of the event, nor had the capacity to express her memory in words been shown, and thus the court could not find her competent at that point.

Eventually, the court authorized a procedure over defense objection, in which Colleen whispered her answers to Doane, who repeated them for the record. Colleen's testimony through Doane was that Uncle Robert had touched both her front and back "private spots" with his "private spot" but did not put his penis into her mouth. She testified that she was scared, and that Uncle Robert threatened to spank her if she told, but that she told her Aunt Susie and her mother.

Following this testimony, the trial court found Colleen competent to testify at trial. However, no further discussion took place concerning the admissibility of Doane's testimony under the child hearsay statute. At trial, the day after Doane's testimony was admitted, defense counsel objected to the trial court's failure to hold a hearing on the admissibility of Doane's testimony. The trial court determined that Leavitt had waived his right to that hearing by failing to timely object.

Colleen testified at trial that Uncle Robert put his "private spot" (penis) on her "private spot" (vagina) and also on her "hienie" (anus). Colleen further testified that she told Conway, her mother, Doane, and "Officer Friendly".

Dr. Carole Jenny, a physician at Harborview Medical Center, testified that she examined Colleen approximately 1 month after the alleged occurrence and found no signs of infection or irritation and no signs of old or healed trauma.

Leavitt's defense was that the allegations were fabricated by Colleen in an attempt to coerce her mother into resuming full-time care of her; Leavitt speculated in his testimony that Colleen learned the details concerning the alleged sexual abuse from hearing her mother accuse Lea-

vitt of sexually abusing Austin when she was younger.

Leavitt was found guilty as charged. He was initially sentenced to 54 months on count 1 and 30 months on count 2, to be served concurrently. As a result of this court's decision in *State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986), Leavitt was resentenced to 48 months for the statutory rape and 25 months for the indecent liberties charge. This appeal was timely filed.

### COMPETENCY

Leavitt contends that Colleen's testimony at the hearing did not support a finding of competency. In addition, Leavitt argues that the procedure used by the trial court in allowing the social worker to relay the child's answers constituted a due process violation.

Former RCW 5.60.050 states in pertinent part:

The following persons shall not be competent to testify:

. . .

(2) Children under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.

The test for competency under the statute was set forth in *State v. Allen, supra*. The *Allen* court stated that a child witness must have the following:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Allen*, at 692.

Recently, the Washington Supreme Court has emphasized the importance of the *Allen* test as follows:

[The *Allen*] test, read in conjunction with the statute, must be applied by the trial court to determine whether the child witness is competent to testify.

*Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 101, 713

P.2d 79 (1986). The *Jenkins* court went on to hold that a deposition by a child witness demonstrated his inability to retain an independent recollection of the occurrence, thus making the deposition inadmissible.

Leavitt argues that it was not shown that Colleen had the mental capacity at the time of the occurrence to receive an accurate impression, nor was it shown that she had a sufficient memory to retain independent recollections of the occurrence, especially in light of her initial responses of "I don't know". However, in *State v. Sardinia*, 42 Wn. App. 533, 713 P.2d 122, *review denied*, 105 Wn.2d 1013 (1986), this court found that it was possible to satisfy the requirement of sufficient mental capacity at the time of the occurrence through the trial court's observation of the child's overall demeanor and the manner of her answers. *Sardinia*, at 537.

Here, the trial court had the opportunity to observe Colleen, and evidence was presented to show her mental capacity at the time of the occurrence, as illustrated by her responses to the prosecutor's questions through her social worker. The standard of review of a child witness competency determination is abuse of discretion. *State v. Hunsaker*, 39 Wn. App. 489, 693 P.2d 724 (1984). We find no abuse of discretion in the trial court's determination that Colleen had the appropriate mental capacity at the time of the occurrence.

With respect to the other *Allen* factors, it is clear that the child's testimony, through Doane, outlined the event in detail and was adequately expressed by the child. However, Leavitt argues the procedure utilized by the trial court was improper.

■ ER 104(a) reads as follows:

**Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of section (b). In making its

determination it is not bound by the Rules of Evidence except those with respect to privileges.

Thus, the trial court has a wide latitude of procedure at its disposal to determine the competency of a witness. Through his observation of Colleen, the trial judge apparently decided that she knew and could articulate the answers to the prosecutor's questions, but that she was reluctant to do so out of shyness or embarrassment. At the end of the process, the trial judge noted on the record that he had overheard most of the child's answers himself and was satisfied that Doane's recitation of those answers was substantially (90 percent) similar to the answers themselves. Because the trial court actually heard the child's answers, we find the trial court did not abuse its discretion in concluding that Colleen was competent to testify.

Leavitt likens the procedure to the use of hypnosis to extract testimony from a witness. The record does not suggest that Colleen was in any way manipulated or had her consciousness altered through the use of the relay procedure. Defense counsel was able to cross–examine Colleen. Thus, the problems present in the use of hypnotized testimony are not present here.

Leavitt also argues that the use of Doane as an "interpreter" is inappropriate because she was an interested party in the trial. This issue may have raised some concerns if the court was relying on Doane's translation of Colleen's testimony from another language. Leavitt's argument is answered by the trial court's statement that he overheard most of the child's answers.

The trial court's finding that Colleen was competent to testify was not error.

## ADMISSIBILITY OF CHILD HEARSAY STATEMENTS

Leavitt argues that his confrontation rights and due process rights were violated by the trial court's failure to hold a hearing to determine the admissibility of child hearsay statements, pursuant to RCW 9A.44.120. The State argues that the failure of Leavitt's counsel to object until after the

admission of the testimony constituted a waiver, such that the issue cannot be raised on appeal.

RCW 9A.44.120 reads in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

In *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), the court found that RCW 9A.44.120 does not violate the Sixth Amendment confrontation clause because the requirements for admission under the statute are consistent with the general approach used to test hearsay against confrontation rights, as set forth in *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). This approach requires: (1) either the production of the out–of–court declarant or a demonstration of unavailability and (2) assurances of reliability of the statement. *Ryan,* at 170.

The *Ryan* court noted that it had adopted a set of factors applicable to determining the reliability of out–of–court declarations in *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982). Those factors are:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan,* at 175–76 (quoting *State v. Parris, supra* at 146).

The *Ryan* court also noted that the *Parris* factors were not exclusive and that additional factors as outlined in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) should be considered. These factors are as follows:

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan,* at 176.

In *State v. Jackson,* 46 Wn. App. 360, 730 P.2d 1361 (1986), the defendant assigned error to the trial court's failure to make a finding that the child victim's hearsay statements were reliable prior to their admission, as required by RCW 9A.44.120. The State argued that the defendant failed to object with specificity, and that because the victim testified, the defendant's confrontation rights were not compromised and therefore the trial court was not required to determine indicia of reliability for the statements.

On appeal, this court found defense counsel's objection sufficiently specific, and held that the availability of a child for cross examination by a defendant in a sexual abuse case does not change the requirement of RCW 9A.44.120(1) that the trial court determine indicia of reliability for the child's out–of–court statements before their admission. *Jackson,* at 367.

Similarly, in *State v. Sammons,* 47 Wn. App. 762, 737 P.2d 684 (1987), the court held on appeal that the trial court's failure to conduct a hearing as required by RCW 9A.44.120 to determine whether the time, content, and circumstances of the statements provided sufficient indicia of reliability was error. *Sammons,* at 764. The *Sammons* court further stated that the fact that the victim testified and was subject to cross examination did not abrogate the hearing requirement of the statute. *Sammons,* at 765.

However, any error arising from the trial court's failure to hold such a hearing is not of constitutional magnitude if the child victim was found competent, testified and was cross-examined at trial because in that instance, no confrontation clause violation occurred. *Jackson,* at 367 n.5.

■ To preserve judicial error for appeal, a timely objection must be made, otherwise a party waives his right to make such a challenge on appeal. *State v. Wicke,* 91 Wn.2d 638, 642, 591 P.2d 452 (1979); *In re Bennett,* 24 Wn. App. 398, 600 P.2d 1308 (1979). *See also* RAP 2.5(a). In *State v. Fisher,* 43 Wn. App. 75, 715 P.2d 530, *rev'd on other grounds,* 108 Wn.2d 419, 739 P.2d 683 (1987), the defendant was prosecuted for indecent liberties. The child victim's mother testified to his statements to her as permitted by RCW 9A.44.120. The defendant challenged for the first time on appeal the admission of the child's hearsay statements. The *Fisher* court determined that because no objection was raised when the mother testified to the child's out-of-court statements concerning the sexual contacts, and because no manifest constitutional right was involved (the child also testified), the issue was not preserved for appeal. *Fisher,* at 78–79.

In the case before us, Leavitt's counsel did not object to the admission of Doane's testimony until the day after she testified. We hold that an objection at that point was not timely. An objection must be made as soon as the basis of the objection becomes known and at a time when the trial judge may act to correct error. 5 K. Tegland, Wash. Prac. § 10 (1982); *Seattle v. Harclaon,* 56 Wn.2d 596, 354 P.2d 928 (1960). Therefore, Leavitt waived his right to the hearing, and the issue is not preserved for appeal.

■ However, even if we were to determine that the issue was properly preserved for appeal, any error in failing to hold the reliability hearing was harmless error. Nonconstitutional error is harmless where it is reasonably probable the error did not materially affect the outcome of the trial. *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). The record reflects Colleen's hearsay statements

were sufficiently reliable that it is highly probable their admission did not affect the result in this case.

Looking first at the *Parris* factors, one can see that, although Colleen had a motive to lie, in that she would have preferred living with her mother to living in foster care, it would seem more reasonable that she would lie about the treatment she received from Conway on a daily basis rather than complain about her Uncle Robert. In addition, her complaint was initially made to Conway, not to her mother. Colleen's teacher also testified to her general character for truthfulness. Colleen told the story to several persons, and the statements were made spontaneously, without any initial prompting. The statements were made shortly after the alleged incident occurred, and the relationship between Doane and Colleen was initially a neutral one. The *Parris* factors appear satisfied.

Applying the *Dutton* factors, one sees that although Colleen's statement was an assertion of past fact, the possibility of Colleen's faulty recollection is remote, since 6–year-olds usually do not have such knowledge of sexual acts, and the circumstances surrounding the statement would not suggest that she misrepresented Leavitt's involvement. We hold the trial court's failure to hold a preliminary hearing pursuant to RCW 9A.44.120 was harmless error.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Leavitt argues that he was denied effective assistance of counsel through his counsel's failure to timely object to Doane's testimony. The United States Supreme Court set forth the appropriate test to determine ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The claim of ineffective assistance of counsel has two components. The defendant must first show that counsel's performance was deficient, that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. The defendant must show that counsel's

representation fell below an "objective standard of reasonableness." *Strickland,* at 688. The defendant must also overcome the presumption that under the circumstances the challenged actions "'might be considered sound trial strategy.'" (Citation omitted.) *Strickland,* at 689.

 Secondly, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, one whose result is reliable. This means that the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* at 694. Unless a defendant makes both showings, it cannot be said that a conviction resulted from a "breakdown in the adversary process that renders the result unreliable." *Strickland,* at 687.

Noting that both the Washington State and the United States Constitutions guarantee a criminal defendant the right to effective assistance of counsel, this court in *State v. Sardinia,* 42 Wn. App. 533, 713 P.2d 122, *review denied,* 105 Wn.2d 1013 (1986) adopted the guidelines set forth in *Strickland.*

Applying those guidelines to the facts here, we agree Leavitt has made a sufficient showing for the first part of the *Strickland* test. It is highly unlikely that defense counsel could have been proceeding under a particular trial strategy by failing to object to the admission of Doane's testimony. In fact, defense counsel's untimely objection shows that the omission was *not* a trial strategy.

However, Leavitt fails to satisfy the second part of the test. We have already determined that the trial court's failure to hold the reliability hearing was harmless error. Thus, there was not a reasonable probability that the outcome of the proceeding would have been different, and Leavitt's claim of ineffective assistance of counsel must fail.

360

Judgment affirmed.

WILLIAMS and GROSSE, JJ., concur.

Review granted by Supreme Court January 5, 1988.