# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>PAUL ANDREW GEIER<br><br>                    Petitioner. | No. 45540-4-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Paul Andrew Geier filed a personal restraint petition (PRP). In the PRP, he argues that he received ineffective assistance of counsel both during his civil commitment trial where a jury determined he was a sexually violent predator (SVP) and during his direct appeal. He also argues that the appellate court violated his due process and equal protection rights by denying him the opportunity to file a statement of additional grounds (SAG) in his direct appeal. Geier fails to satisfy the prejudice prong of his ineffective assistance of counsel claims and he was not entitled to file a SAG. We deny Geier's petition.

## FACTS

In 1992, Geier pleaded guilty to three counts of rape of a child in the first degree. The trial court sentenced him to 194 months' incarceration. On May 15, 2008, the State filed a petition seeking Geier's involuntary civil commitment as a SVP, under chapter 71.09 RCW.

CIVIL COMMITMENT PROCEEDING

Geier's civil commitment proceeding began on May 25, 2011. Pretrial, the court granted an agreed motion in limine, precluding questions related to prior bad acts or crimes committed by witnesses, other than Geier, "unless and until this Court rules such evidence admissible after an

offer of proof or hearing is held outside the presence of the jury." Clerk's Papers (CP) at 299. Both the State and Geier called expert witnesses to testify.

The State's expert witness, Dr. Harry Hoberman, testified that he diagnosed Geier with a nonexclusive form of pedophilia and an antisocial personality disorder. Furthermore, he testified that due to these disorders, Geier had serious difficulty controlling his sexually violent behavior. He stated that in his opinion, Geier

> is, in fact, characterized by a mental abnormality and a personality disorder that causes him serious difficulty and control and that make him more probable than not to sexually re-offend . . . and that he would be more probable than not to commit predatory acts of sexual violence if not confined to a secure facility.

Report of Proceedings (RP) (June 2, 2011) at 682.

Geier's expert witness, Dr. Robert Halon, testified that Geier was a pedophile and there is "nothing in the diagnostic criteria for pedophilia about being predisposed to acting on it." RP (June 7, 2011) at 1050. Halon also testified that his examination of Geier did not reveal a mental disorder, stating there is "no evidence that [Geier] doesn't know what he's doing whenever he's doing it." RP (June 7, 2011) at 1005. He further stated that Geier did not suffer from a mental condition that would make him act on his pedophilic interests. Halon testified about his own qualifications and credentials. He also questioned and critiqued some of Hoberman's testimony.

During cross-examination, Halon acknowledged that the California Department of Mental Health had previously terminated his contract and removed him from its panel of evaluators in the 1990's; that revocation of his license due to a complaint filed against him by the California Board of Psychology in 1998 was stayed; and, that he entered into a stipulated settlement of the issue in 1999.

Geier's counsel objected to the State's questioning, arguing that the motion in limine prevented impeachment of the expert witness in regards to his prior bad acts. The State responded

that the motion in limine was only applicable to non-expert witnesses and that Halon had testified about his licensing status in every trial in which he provided expert testimony. Geier's counsel stated that the State did not provide the information to her before trial, that the "onus was on the State," and that introduction of the information violated the motion in limine. RP (June 8, 2011) at 1193.

The court heard argument from both parties about whether or not the testimony should be admitted. During argument, Geier moved for a mistrial. The State argued that Geier's counsel knew about the disciplinary issues prior to trial because counsel had contacted the State about Halon's disciplinary history months beforehand. Geier's counsel responded that she had e-mailed the State asking for information about Halon. The court requested the e-mail but neither party could locate it.

The trial court found that the State's line of questioning did not follow the procedure from the order in limine but it denied Geier's motion for a mistrial, stating that the order did not prohibit the admission of all prior bad act evidence, but instead "meant that we would follow a procedure, which we are now following." RP (June 8, 2011) at 1204. The court found that the State's questioning would yield "precisely the type of information that is allowed in order to have the jury fully and fairly evaluate the expert witness," and allowed the testimony. RP (June 8, 2011) at 1204. Halon continued to testify and stated that he had been on probation for three years as part of his 1999 stipulated settlement. He also stated that his practice had "not been interrupted for a minute in the 30-something years [he] had the license." RP (June 8, 2011) at 1207. The State and Geier's counsel questioned Halon about his evaluations of Geier and the information Halon reviewed and gained from interviews with Geier.

After the trial ended, the State provided the trial court the referenced e-mail that Geier's counsel sent to the State on January 31, 2011. The e-mail regarded a different client from a separate case but stated,

> [W]e recently received some information regarding Dr. Halon which will require we request a 2nd expert on this case. We were informed of a 1995 disciplinary action and a recent matter where our client Mr. [X] was mentioned in an evaluation Dr. Halon did for one of his other client's. Let me know if you would be objecting to our request and if you are then we will schedule a motion to address this issue.

CP at 566.

In addition to Hoberman's testimony, the State provided Geier's history of charged and uncharged offenses from the ages of 15 to 27. Geier previously pleaded guilty to three counts of rape of a child in the first degree, involving four different boys. During treatment, Geier also admitted to 44 incidents of sexual assault against 20 to 37 male and female victims who were between the ages of 2 and 20. The State presented testimony from several counselors about Geier's time in treatment. The counselors opined that Geier had issues following rules, acting out, and having prohibited relationships with other individuals in treatment and during his commitment.

Geier testified and presented testimony from several other witness, including his Buddhist teacher, his brother, and a support service provider from his childhood with whom he still communicated. These individuals testified that Geier had made positive progress. They testified about Geier's involvement with Buddhism over the past fifteen years, his treatment, and his taking responsibility for his actions. Additionally, a polygraph examiner, who administered a plethysmograph test on Geier, testified about Geier's arousal response to the test.

On June 14, 2011, the jury found Geier to be a SVP and the court entered an order committing Geier to the Special Commitment Center, in the custody of the Department of Social and Health Services.

4

DIRECT APPEAL

Geier filed a direct appeal from the order of commitment. The trial court found Geier indigent and he was appointed counsel. Geier communicated with his appellate counsel through written correspondence and appears to have expressed concern about Halon's testimony because his appellate counsel wrote him, "I understand your concern regarding Dr. Halon's background."[1] PRP Appendix A. Additionally, in a letter to Geier dated May 9, his appellate counsel stated, "Please be assured that the issue pertaining to your expert witness will be fully addressed in the reply brief." PRP Appendix A. In this same letter, appellate counsel told Geier that RAP 10.1(h) "is not for the purpose of moving to file a supplemental brief at this point in the appeal process." PRP Appendix A. Geier's appellate counsel also informed him that the filing of a SAG is only permitted in criminal cases.

On January 28, 2013, Geier's appellate counsel wrote him a letter updating him on the status of his appeal. In the letter she stated,

> The Court of Appeals will consider your case on March 1, 2013. . . . Depending on what the Court decides, I will advise you further at that time.

> Unfortunately, my appointment as appellate counsel does not extend to the Supreme Court. However, as I have explained, we should await the outcome and determine how to best proceed at that point.

PRP Appendix A.

In his appeal, one of Geier's arguments related to the trial court denying his motion for a mistrial after the State questioned Halon about his disciplinary issues. *In re Det. of Geier*, 174 Wn. App. 1036, 2013 WL 1489825, at *2. We held that the State violated the order in limine by beginning to question Halon before making an offer of proof, but that Geier did not suffer "any

---

[1] In his PRP, Geier did not provide us with any of his own letters to appellate counsel, only the letters he received.

5

prejudice, let alone prejudice for which a new trial is the only available remedy." *Geier*, 2013 WL 1489825, at *3. Additionally, because Geier argued ineffective assistance of trial counsel for the first time in his reply brief, we did not consider the argument. *See Geier*, 2013 WL 1489825, at *3 n.2.

Geier's appellate counsel wrote Grier again on April 12, 2013, notifying him of our decision in his direct appeal and informing him a second time that her representation did not extend to a discretionary appeal to the Supreme Court, but that "many appellants file motions for reconsideration or petitions for review pro se." PRP Reply Br. Appendix A. She included Rules of Appellate Procedure (RAP) to aid him and generally explained his options going forward. She stated, "If the Supreme Court grants your petition, it will appoint an attorney to represent you upon request due to your indigent status." PRP Reply Br. Appendix A.

On April 25, 2013, Geier filed a pro se motion for reconsideration, which we denied. We mandated the direct appeal on August 13. Geier now files a PRP.

ANALYSIS

Geier argues that he received ineffective assistance of counsel at his commitment proceeding and during his direct appeal. He also argues that the appellate court violated his due process and equal protection rights by denying him the opportunity to file a SAG. We disagree.

I. STANDARD OF REVIEW

In a PRP, a petitioner must state the facts on which he bases his claim of unlawful restraint and describe the evidence available to support the allegations; conclusory allegations alone are insufficient. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176, 248 P.3d 576 (2011); RAP 16.7(a)(2)(i). "As a threshold matter, it is important to note that a personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice

require relitigation of that issue." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). A "ground for relief" is a distinct legal basis for granting relief and is considered "raised and rejected on direct appeal" if the same ground presented in the petition was determined adversely to the petitioner on appeal and the prior determination was on the merits. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671 n.14, 101 P.3d 1 (2004); *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 564, 933 P.2d 1019 (1997). "A [petitioner] may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim." *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001).

We consider the arguments raised in a PRP under one of two different standards, depending on whether the argument is based on constitutional or nonconstitutional grounds. *Davis*, 152 Wn.2d at 671-72. A petitioner raising constitutional error must show by a preponderance of the evidence that the error caused actual and substantial prejudice. *Davis*, 152 Wn.2d at 671-72. In contrast, a petitioner raising nonconstitutional error must show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). However, a petitioner arguing ineffective assistance of counsel need not show more prejudice on collateral attack than on direct appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845-46, 280 P.3d 1102 (2012).

In evaluating personal restraint petitions, we may: (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the personal restraint petition without further

hearing if the petitioner has proven actual prejudice or a miscarriage of justice. *Stockwell*, 160 Wn. App. at 176-77.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Geier argues that he received ineffective assistance from both his trial counsel and his appellate counsel. We disagree.

"Persons who are the subject of an SVP commitment proceeding have a statutory right to the assistance of counsel." *State v. Ransleben*, 135 Wn. App. 535, 540, 144 P.3d 397 (2006); RCW 71.09.050(1). The right to counsel is meaningless unless it includes the right to effective counsel. *In re Det. of T.A.H.-L*, 123 Wn. App 172, 179, 97 P.3d 767 (2004). Washington has adopted the *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test to determine whether counsel was ineffective. *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001).

First, a defendant must show that counsel's performance was deficient. *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). Performance is deficient if it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 688). And second, a defendant must show that there is a reasonable probability that such deficient performance prejudiced him. *McFarland*, 127 Wn.2d at 335. A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome." *State v. Leavitt*, 49 Wn. App. 348, 359, 743 P.2d 270 (1987). To prevail, a petitioner must establish both elements of the test. *Davis*, 152 Wn.2d at 673.

A defendant alleging ineffective assistance must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance

is not deficient." *Kyllo*, 166 Wn.2d at 863. Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

A.    Ineffective Assistance of Trial Counsel

Geier points to three areas in which his trial counsel's performance was deficient. Geier argues that his trial counsel did not adequately investigate Halon, that his trial counsel failed to discuss the disciplinary history with him, and that his trial counsel improperly relied on the motion in limine to keep the evidence out. He also contends that this conduct prejudiced him.[2] Geier states that he was particularly prejudiced because, "when the jury hear[d] that the State of California does not trust [Halon], there is very little probability that the members of the jury [would] believe [Halon]." Supp. Br. of Petitioner at 24.

Chapter 71.09 RCW provides that a person may be committed to a secure facility indefinitely if he or she is found to be a sexually violent predator. RCW 71.09.060(1). A sexually violent predator is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). The State must show that the offender is both mentally ill and that the mental illness causes the offender to be presently dangerous. *In re Det. of Brown*, 154 Wn. App. 116,

---

[2] The State argues that Geier's argument is merely recasting his contention on direct appeal as an ineffective assistance of counsel claim. We disagree. Geier's argument does entirely spring from the admission of Halon's disciplinary history. However, we only considered the prejudicial impact of violating the motion in limine on direct appeal, not the prejudicial impact of having Halon as an expert witness. In the direct appeal, we considered whether Geier was prejudiced by the early admission of evidence that would have come in anyway. In the PRP, we also consider whether Geier was prejudiced by his counsel's decision to use the witness at all. In the first instance, we decided that once Halon was called, the evidence would come in. We will consider Geier's argument as a separate ground for relief from his direct appeal.

122, 225 P.3d 1028 (2010). The statute also provides that any indigent person, subjected to an evaluation under the chapter, is entitled to one expert or professional person to conduct an evaluation on the person's behalf, at the expense of the office of public defense. RCW 71.09.050(2), .055.

In order to prevail on his ineffective assistance of counsel claim, Geier must show that his counsel was deficient, *McFarland*, 127 Wn.2d at 334, and that the deficient performance of his counsel prejudiced his trial, to the point that it undermined confidence in the result. *Leavitt*, 49 Wn. App. at 359. If either prong is not satisfied, Geier's claim must fail. *Davis*, 152 Wn.2d at 673. Geier cannot satisfy the prejudice prong of the test, much less demonstrate that counsel's performance was deficient.

First, using Halon as an expert witness does not automatically equate to deficient performance. Halon is a very knowledgeable and frequently utilized expert witness for the defense. Despite the possibility for impeachment, Halon also was able to critique the State's expert witness and to provide extensive information and analysis from years of experience. Halon testifies about his disciplinary history in almost every trial for which he is an expert witness and the incidents were twelve years prior. Additionally, defense counsel put on several other witnesses including, Geier's Buddhist teacher, his brother, and a support service provider from his childhood with whom he still communicated. All of these individuals provided testimony indicating Geier had made positive progress.

Defense counsel's decision to call Halon, rather than showing a failure to conduct reasonable research, appears to have been a legitimate trial tactic. Furthermore, during oral argument, Geier's counsel seemed to abandon the argument that trial counsel failed to investigate Halon, acknowledging the parts of the record that demonstrated trial counsel likely did know, and

instead focused on how trial counsel controlled the information as it was delivered to the jury. At oral argument, Geier did not argue the impeachment evidence was inadmissible; rather, he argued it should have come in on direct examination and not cross-examination. However, there is more than one way to present admissible impeachment evidence. Based on a review of the entire trial record, trial counsel's overall performance was objectively reasonable.

Second, Geier cannot show there is a reasonable probability that counsel's performance prejudiced him. *See Leavitt*, 49 Wn. App. at 359. Halon testified extensively over three separate days about his examination of Geier, his own qualifications and credentials, and his experience providing this kind of expert testimony over many years. Halon attacked several of the State's expert witness's positions and provided knowledgeable and clear information. Additionally, the State provided testimony through direct and cross-examination that revealed Geier's convictions, his disclosed but uncharged offenses, and his behavior while in confinement and treatment. Geier's counsel put on a comprehensive case that showed the jury Geier's progress and overall transformation. Geier has failed to show how the use of this expert prejudiced him.

With respect to Geier's contention at oral argument, Geier has also failed to show that admissible testimony about Halon's disciplinary history, presented on cross-examination and not in direct evidence, prejudiced him. Moreover, the prejudicial impact of the admissible evidence was already decided in his direct appeal. *See Geier*, 2013 WL 1489825, at *3.

We conclude that Geier received effective assistance from trial counsel.[3]

---

[3] Geier also argues that if there is insufficient evidence to show that trial counsel's representation was deficient, there is sufficient evidence to warrant a reference hearing to determine what trial counsel actually knew. We do not consider this argument because Geier cannot demonstrate deficient performance or prejudice.

B.    Ineffective Assistance of Appellate Counsel

Geier also argues that he was denied effective assistance of appellate counsel because his assigned counsel did not include ineffective assistance of his trial counsel in his direct appeal and refused to appeal his case to the Washington Supreme Court. We disagree.

1.    Ineffective Assistance of Counsel Claim

Geier argues that his appellate counsel's conduct in not raising ineffective assistance of trial counsel prejudiced him. He contends that he was prejudiced because he would have been successful in the claim had his counsel properly raised the issue. However, as is explained above, we hold that Geier did not receive ineffective assistance of counsel at trial. Thus, Geier's claim that his appellate counsel provided deficient representation also fails.

2.    Appeal to the Washington Supreme Court

Geier also contends that as a result of his appellate counsel's conduct, his opportunity to appeal to the Washington Supreme Court was forfeited. He argues that his appellate counsel lied to him, or at least misled him, when she told him her appointment did not extend to representation in a discretionary appeal to the Washington Supreme Court.

After we issued our decision on his direct appeal, Geier's appellate counsel wrote him to express her predictions on the success of a motion to reconsider, to remind him that her representation did not extend to a discretionary appeal to the Washington Supreme Court, and to provide him options about going forward pro se. She stated, "If the Supreme Court grants your petition, it will appoint an attorney to represent you upon request due to your indigent status," and she included relevant portions of the RAP. PRP Reply Br. Appendix A. The letter in no way deterred Geier from pursuing further appeals. Geier has neither shown that his appellate counsel's conduct was deficient nor that it prejudiced him. He has merely asserted that the reason he did not

12

file a discretionary appeal was that his counsel wrote him a letter saying her representation would not extend to filings in the Supreme Court.

A petitioner must do more than make conclusory statements, he must state the facts on which his claim is based and describe the evidence available to support the allegations. *Stockwell*, 160 Wn. App. at 176. Geier has not met this burden and we conclude that his argument lacks merit.

III.    DUE PROCESS AND EQUAL PROTECTION RIGHTS

Geier contends that the language limiting the right to file a SAG to criminal defendants violates his due process and equal protection rights. We disagree.

A.    Due Process

The United States Constitution guarantees that federal and state governments will not deprive an individual of "life, liberty, or property, without due process of law." U.S. CONST. amends. V & XIV, § 1. When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006). The process due depends on what is fair in a particular context. *In re Det. of Morgan*, 180 Wn.2d 312, 320, 330 P.3d 774 (2014).

In order to determine whether a particular procedural protection is required in a given context, we consider three factors: (1) the liberty interest at stake; (2) the risk of erroneous deprivation of that liberty interest with the existing procedures and the probable value, if any, of additional safeguards; and (3) the government interest, including costs and administrative burdens of additional procedures. *In re Det. of Stout*, 159 Wn.2d 357, 370, 150 P.3d 86 (2007) (applying test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

Geier argues that he should have been allowed to file a SAG even though civil commitment proceedings are not criminal proceedings. He contends that the language in the RAP violates his due process rights. Civil commitment is a significant deprivation of a protected interest, liberty. *Stout*, 159 Wn.2d at 369. However, Geier was not deprived of notice or an opportunity to be heard given the particular context. *See Morgan*, 180 Wn.2d at 321-22. The State Supreme Court has previously held that a respondent in an SVP commitment proceeding is due some of the same rights as a criminal defendant, including a meaningful opportunity to contest facts in a criminal trial, a full SVP trial, and representation of counsel. *Morgan*, 180 Wn.2d at 321-22. In *Morgan*, the Supreme Court held, "We find no additional protections that would minimize the risk of error without significantly undermining compelling State interests." 180 Wn.2d at 323. We follow this holding and conclude that Geier was not deprived of his due process rights.

B.      Equal protection

The Fourteenth Amendment of the United States Constitution and article 1, § 12 of the Washington State Constitution require that similarly situated persons receive similar treatment under the law. *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). "'Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.'" *In re Det. of Thorell*, 149 Wn.2d 724, 745, 72 P.3d 708 (2003) (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)).

Where there is not a suspect class and the right at issue is not a fundamental right, we use the rational basis test to resolve equal protection claims involving SVP commitment proceedings. *In re Det. of Turay*, 139 Wn.2d 379, 409-10, 986 P.2d 790 (1999). Rational basis review requires a legitimate governmental objective and a rational means of achieving it. *In re Det. of Ross*, 114

Wn. App. 113, 118, 56 P.3d 602 (2002). "To overcome the strong presumption of constitutionality, the classification must be purely arbitrary." *Ross*, 114 Wn. App. at 118. The burden falls on the party challenging the classification to show that the classification is arbitrary. *Ross*, 114 Wn. App. at 118.

We have previously considered whether a court rule itself violates equal protection. *See State v. Osman*, 126 Wn. App. 575, 583, 108 P.3d 1287 (2005) (holding that a trial court's application of the statute and court rules does not reflect any equal protection violation), *aff'd*, 157 Wn.2d 474, 139 P.3d 334 (2006); *State v. W.W.*, 76 Wn. App. 754, 758, 760, 887 P.2d 914 (1995) (reviewing JUCR 7.13 and holding that the state failed to provide any rational basis). RAP 10.10(a) provides, "In a criminal case on direct appeal, the defendant may file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." Court rules are interpreted like statutes and are subject to the principles of statutory construction. *State v. Royal*, 122 Wn.2d 413, 424, 858 P.2d 259 (1993).

Here, Geier argues that his equal protection rights were violated because there is not a legitimate governmental interest in treating criminal defendants and SVP respondents differently on appeal and the consequences of a chapter 71.09 RCW commitment are actually more severe than criminal proceedings. However, civil commitment proceedings under the SVP statute and imprisonment for a criminal conviction are appropriately treated differently. SVPs are committed for rehabilitative purposes, not for punishment. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 20-21, 857 P.2d 989 (1993), *superseded by statute on other grounds as stated in Thorell*, 149 Wn.2d 724. Further, the SVP procedures are unlike criminal trials. SVP commitments are reviewed yearly and a SVP can be released from civil confinement or receive less restrictive alternatives if

15

he or she no longer poses the same risk to the public. RCW 71.09.070. There are clear distinctions between people committed as SVPs and those incarcerated pursuant to convictions. These differing safeguards for SVP's and criminal defendants demonstrate a legitimate governmental interest and a rational means to achieve it. Geier has not sustained his burden to overcome the strong presumption of constitutionality of RAP 10.10.

We hold that Geier did not demonstrate prejudice in either ineffective assistance of counsel claim. We also hold that Geier's due process and equal protection rights were not violated when he was denied the opportunity to file a SAG in his direct appeal. We dismiss Geier's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.