

This opinion was filed for record

at 8.00 am on Feb. 15, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 94418-1 |
| Respondent, | |
| v. | EN BANC |
| OSCAR RAUL LOPEZ, | |
| Petitioner. | Filed FEB 15 2018 |

GORDON McCLOUD, J.—The trial court found that Oscar Lopez's lawyer was "fairly obvious[ly]" "severely handicapped" by depression during the pretrial and trial phases of Lopez's case.[1] That finding was supported by the trial court's own observations of defense counsel's performance—and sometimes failure to show up—at trial. That finding was also supported by declarations and testimony presented at the hearing on Lopez's motion for a new trial. That evidence revealed that defense counsel could not perform basic tasks, such as showing up to meetings with his investigator to prepare Lopez's defense, submitting routine paperwork to

---

[1] 11 Verbatim Report of Proceedings (VRP) (Oct. 30, 2015) at 1315.

1

obtain public funding so his investigator could complete her pretrial investigation, and calling his investigator back to learn about her "important" findings.[2] Based on that evidence, the trial court concluded that Lopez was denied his constitutional right to effective assistance of counsel and granted Lopez's motion for a new trial. See U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We agree with the trial court. We therefore reverse the Court of Appeals' decision to reverse the trial court.

FACTS AND PROCEDURAL BACKGROUND

Lopez was employed as a bus driver by an after-hours day care center. He drove children from the day care center to school in the morning, and then back again in the afternoon after school. 9 VRP (Mar. 11, 2015) at 1076, 1085. One of those children was six-and-a-half-year-old L.M. Def. Ex. 18 (Tr. of Interview of L.M.) at 2. Sometimes, due to the children's schedules and the location of their schools, Lopez would be alone with L.M. on the bus. 6 VRP (Mar. 4, 2015) at 498-509.

On June 6, 2014, L.M. reported to her mother that Lopez had "'touched [her] butt yesterday'" morning before school when she was alone with him on the bus. 7 VRP (Mar. 5, 2015) at 663. When questioned further about that touching, L.M. explained that Lopez had "itch[ed]" and "tickl[ed]" her vagina in a way that felt as though he was "trying to pinch [her]." Def. Ex. 18, at 13. L.M.'s mother contacted

---

[2] Clerk's Papers (CP) at 289.

the police, and the State charged Lopez with first degree child molestation. CP at 77.

Lopez denied L.M.'s allegation of child molestation. Attorney Steven Witchley represented him, and the case proceeded to a jury trial. Lopez's defense theory was that L.M.'s claim was not believable. 10 VRP (Mar. 12, 2015) at 1198. To credit L.M.'s version, Witchley explained, the jury would have to believe four unbelievable things: (1) that Lopez, a family man, molested L.M.; (2) that the molestation occurred sometime between January and June 2014, but not "yesterday" morning before school as L.M. reported because the bus logs proved that Lopez was never alone with L.M. that morning; (3) that L.M. waited weeks or months before reporting the incident to her mother even though L.M. testified that she reported the incident immediately; and finally (4) that Lopez would be brazen enough to touch L.M. like that in public in the day care center's busy parking lot. *Id.* at 1185-97.

The jury apparently believed L.M. and convicted Lopez of first degree child molestation. CP at 81.

After the verdict but before sentencing, Lopez fired Witchley and hired a new attorney. The new attorney filed a motion for a new trial based on ineffective assistance of counsel. *Id.* at 292-97. To prevail on a claim of ineffective assistance of counsel, a defendant must generally show that counsel performed deficiently and

that the deficient performance caused prejudice.[3] Lopez argued that he did not have to prove deficient performance or prejudice because severe mental depression coupled with contemporaneous or nearly contemporaneous disbarment[4] constitutes ineffective assistance of counsel per se. *Id.* at 294 (quoting *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 883-85, 16 P.3d 601 (2001) (Talmadge, J., concurring)). Alternatively, Lopez identified Witchley's performance, including his failure to adequately investigate, *id.* at 121-24, and failure to call certain witnesses that Lopez had identified, *id.* at 295-96, as grounds for ineffective assistance.[5]

It is undisputed that while Witchley was representing Lopez, Witchley was suffering from severe depression, had suicidal thoughts, 11 VRP (Oct. 8, 2015) at 1298, and struggled with just getting out of bed each day, CP at 291. Karen Sanderson, Witchley's longtime investigator, acknowledged that as Lopez's case neared trial, she observed Witchley's depression worsening under the weight of

---

[3] *E.g.*, *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 377, 402 P.3d 266 (2017) (citing *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011)).

[4] Witchley was never formally disbarred from practice in Washington because he voluntarily resigned his license in lieu of disbarment. CP at 298-310.

[5] Unrelated to the issues before us, Lopez also claimed that Witchley was deficient because Witchley allegedly failed to convey a plea offer to Lopez, *id.* at 129-33, and allegedly knew that Lopez could not understand the court appointed interpreter and did not inform the court of that communication barrier, *id.* at 125-28. The trial court rejected those claims, 11 VRP (Oct. 30, 2015) at 1317, and Lopez did not seek review of that ruling.

significant financial troubles, health problems, and a pending disbarment proceeding. 11 VRP (Oct. 8, 2015) at 1298; CP at 289-90.

The record supports this assessment and shows that these problems impacted his performance. Witchley failed to appear at court one day without explanation. 11 VRP (Oct. 8, 2015) at 1252. He also called in sick at the last minute on the morning of trial another day and asked to postpone trial to the afternoon. CP at 59. On the days when he did manage to show up, he was usually late. *E.g.*, 2 VRP (Feb. 12, 2015) at 48 (10 minutes late), 3 VRP (Feb. 23, 2015) at 238 (15 to 20 minutes late). Once, he was over an hour late. 6 VRP (Mar. 4, 2015) at 521 (one hour and 20 minutes late). Witchley's inability to show up for trial alarmed the trial judge so much that he asked Lopez—either close to or in the middle of trial—if he wanted a new attorney. 11 VRP (Oct. 8, 2015) at 1252-53. At that point, Lopez declined the offer. But when Witchley continued to arrive late for trial, the trial court warned him: "[F]rankly, I'm a little baffled. We've spoken about this a number of times. You're obviously a very able trial attorney, but this continues to be an issue. So Mr. Witchley, sir, if you could -- I really want to make sure we're communicating here. . . . I expect you to be on time." 3 VRP (Feb. 23, 2015) at 238-39. That warning proved inadequate, however; Witchley continued to show up late for trial. 6 VRP (Mar. 4, 2015) at 522-24. He also failed to submit briefing specifically requested by the court. *Id.*

5

Sanderson's testimony also supported this assessment of Witchley's mental health and its impact on Lopez's trial. Sanderson testified that she met with Witchley in October, several months before Lopez's trial, to create a checklist of matters that Witchley needed her to prepare for Lopez's defense. The checklist included interviewing certain employees at the day care center, locating witnesses from the children's schools to verify Lopez's whereabouts on the morning of the alleged incident, performing another site visit to the day care parking lot, and developing evidence regarding both L.M.'s penchant for lying or exaggerating stories and Lopez's sexual morality and decency. 11 VRP (Oct. 8, 2015) at 1289-90.

After that October meeting, however, Sanderson explained that Witchley "checked out." CP at 289. Witchley was routinely late and often failed to show up at case development meetings scheduled with her. *Id.* at 288. According to Sanderson, she and Witchley "tr[ied] to set up some times to meet to go to the scene together but he almost always cancelled at the last minute, with a different excuse every time." *Id.* "Every time he cancelled at the last minute he offered a new excuse" that "was always something like 'I over slept and can't make it' or 'I didn't sleep last night' or 'I'm sick.'" *Id.* at 288-89.

Eventually, Witchley stopped communicating with Sanderson altogether. 11 VRP (Oct. 8, 2015) at 1286. As a result, Sanderson was unable to give him important case information she discovered during her investigation. Sanderson said she left

6

Witchley a voicemail, an e-mail, and text messages asking him to call her back so they could talk about the new information she learned during her last interview, which she believed was "important" to Lopez's case. CP at 289. But Witchley never called her back, so she never told him what that "important" information was. *Id.* She also did not document that "important" new information in a memo because Witchley stopped paying her to do so and refused to take the simple steps necessary to procure additional payments. *Id.*

In fact by December 2014, Sanderson had been working on Lopez's case for two months without payment based on Witchley's promise of eventual payment. Because Lopez was indigent, Sanderson's investigative work was paid through the Office of Public Defense (OPD). *Id.* at 89-90. The OPD had preauthorized $1,500 for Sanderson to develop Lopez's defense, *id.* at 89, but Sanderson had exceeded that amount by October 2014, *id.* at 289. To receive additional funding for Sanderson's investigation, Witchley had to submit a request to OPD. *Id.* This is a fairly routine process. Because Witchley repeatedly implied to Sanderson that he had submitted a request for additional funding, Sanderson continued to work on Lopez's case for an additional two months, from October to December, without payment. *Id.* After two months without payment and after Witchley stopped returning her calls, Sanderson had to stop work on Lopez's case. *Id.* "This meant that some things [they] had planned to do on the case prior to trial never took place.

7

[Sanderson] had several reports that should have been written that were not typed up. There were interviews that never took place, as far as [Sanderson] kn[e]w. Demonstrative exhibits, prep for [Sanderson's] testimony and other tasks never happened." *Id.* According to Sanderson, Witchley claimed to have strategic reasons for not calling Sanderson as a witness at trial. *Id.* at 291. But he never claimed to have strategic reasons for failing to follow through on the work that he himself had deemed necessary in October before he became severely handicapped by illness—interviews, meet ups, exhibits, "other tasks" for trial preparation, and simple communication about the defense. *Id.* at 289.

OPD records show that Witchley did not submit the request for additional funding until *after* Lopez's trial ended. *Id.* at 89. In that request for additional, retroactive, funding, Witchley acknowledged that Sanderson had reminded him continuously throughout Lopez's case that he needed to secure extra OPD funding for her continued investigation and that he "simply failed to appropriately prioritize submission of [the request]" "[f]or a variety of not-very-good reasons." *Id.* at 92-93.

After considering all this evidence, the trial court granted Lopez's motion for a new trial due to ineffective assistance of counsel and denial of due process clause protections. 11 VRP (Oct. 30, 2015) at 1309-10, 1315-17. The trial court found, based largely on Sanderson's testimony and declaration, that it was "fairly clear that

had [Witchley] not been handicapped by his depression, he would have been more effective," *id.* at 1316, in "[his] handling of the entire case, including pretrial investigation and communications with his client," *id.* at 1311. Witchley's depression, the trial court found, "fairly obvious[ly]" "severely handicapped" his representation of Lopez. *Id.* at 1315.

One of the failures that the trial court cited was Witchley's failure to investigate reputation evidence or call reputation witnesses. Regarding this failure, Witchley specifically acknowledged that "[he] did not have any tactical reasons for not calling reputation witnesses." CP at 347. That acknowledgement corresponded with Sanderson's testimony. Sanderson testified that she developed reputation evidence in other cases for Witchley before, 11 VRP (Oct. 8, 2015) at 1297, and that it was her understanding, based on her 15 plus years of experience working with Witchley, CP at 285, that it was his intent to pursue credibility evidence regarding L.M. and sexual morality reputation evidence regarding Lopez in this case, 11 VRP (Oct. 8, 2015) at 1293.[6] But Sanderson never performed this investigation because Witchley stopped paying her and stopped communicating with her. CP at 289.

---

[6] According to Sanderson, her assignment was to "go back and interview day care workers to find out if [L.M.] had a propensity for lying or making up stories or exaggerating stories" and learn "what [Lopez's] reputation in the community was for . . . along the lines of that he's not a child molester, that he's a good, a good person," 11 VRP (Oct. 8, 2015) at 1293, specifically Lopez's "good sexual morality and/or decency in the community," *id.* at 1297.

9

The trial court found this failure particularly troubling since Witchley did not have to even search for the reputation witnesses because Lopez told him who they were, though Lopez described these witnesses' anticipated testimony in terms of character rather than reputation evidence. 11 VRP (Oct. 30, 2015) at 1309. According to the trial court, Witchley "simply failed to spot the issue." *Id.* Witchley, in dismissing Lopez's request that he call "certain *character* witnesses," "never took the additional step [in] asking whether the proposed testimony might be recast as admissible *reputation* testimony." *Id.* (emphasis added). Based on this evidence, on the trial court's own observations of Witchley's performance before and during trial, and on the new evidence heard and reviewed at the hearing on the motion for a new trial—including the evidence showing Witchley's failure to communicate, failure to prepare, and sometimes failure to perform at all—the trial court granted Lopez's motion for a new trial.

The Court of Appeals reversed. *State v. Lopez*, No. 74333-3-I, slip op. at 2 (Wash. Ct. App. Mach 20, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/743333.pdf, *review granted*, 189 Wn.2d 1001, 400 P.3d 1263 (2017). It interpreted the trial court's finding of ineffective assistance of counsel as being based solely on Witchley's failure to call reputation witnesses to testify about Lopez's sexual morality and decency. *Id.* at 4. Because the fact that Witchley failed to call reputation witnesses was not in dispute, the issue

10

that the Court of Appeals identified was solely a question of law, which it reviewed

de novo. *See id.* at 4-6. On that purely legal question, the Court of Appeals held

that Witchley's failure to investigate and present sexual morality and decency

evidence could not be classified as deficient performance because such evidence is

not admissible under a published decision from that division: *State v. Jackson*, 46

Wn. App. 360, 365, 730 P.2d 1361 (1986). *Id.* at 6. This Division One panel

recognized that Divisions Two and Three of the Court of Appeals have reached an

opposite conclusion regarding the admissibility of sexual morality evidence[7] but

determined that that conflict was immaterial because "counsel has . . . no duty to

pursue strategies that appear unlikely to succeed, and no duty to anticipate changes

in the law." *Id.* (citing *State v. Brown*, 159 Wn. App. 366, 371-72, 245 P.3d 776

(2011)).

As for the trial court's finding that Witchley's depression had "fairly

obvious[ly]" "severely handicapped" his representation of Lopez, 11 VRP (Oct. 30,

2015) at 1315, the court interpreted that finding as relating solely to Lopez's per se

---

[7] *Compare State v. Griswold*, 98 Wn. App. 817, 828, 991 P.2d 657 (2000) (Division Three holding evidence of sexual morality and decency is admissible), *abrogated on other grounds by State v. DeVincentis*, 150 Wn.2d 11, 74 P.3d 119 (2003), *and State v. Harper*, 35 Wn. App. 855, 859-60, 670 P.2d 296 (1983) (Division Two stating such evidence is admissible), *with Jackson*, 46 Wn. App. at 365 (Division One holding such evidence is inadmissible).

prejudice/quasi-due process argument and held that defendants have no right to counsel free from mental illness. *Id.* at 2.

Lopez petitioned this court for review, which we granted. *Lopez*, 189 Wn.2d 1001.

## ANALYSIS

I.    Ineffective Assistance of Counsel Requires a Showing of Deficient Performance and Prejudice; Whether Counsel's Performance Was Deficient and Prejudicial Is a Mixed Question of Fact and Law, Which We Review De Novo

*A. The Test for Ineffective Assistance of Counsel*

A criminal defendant is entitled to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 99, 351 P.3d 138 (2015). Effective assistance includes many things. "It is thus impossible to 'exhaustively define the obligations of counsel [ ]or form a checklist for judicial evaluation of attorney performance.'" *Tsai*, 183 Wn.2d at 99-100 (alternation in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Nevertheless, effective representation 'entails certain basic duties,' such as

> a duty of loyalty, a duty to avoid conflicts of interest[,] . . . the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the

12

> defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

*Id.* at 100 (alterations in original) (quoting *Strickland*, 466 U.S. at 688). In addition, the "right to effective assistance includes a 'reasonable investigation' by defense counsel." *State v. Boyd*, 160 Wn.2d 424, 434, 158 P.3d 54 (2007) (citing *Strickland*, 466 U.S. at 684; *Brett*, 142 Wn.2d at 873). Reasonable investigation "includes expert assistance necessary to an adequate defense." *State v. Punsalan*, 156 Wn.2d 875, 878, 133 P.3d 934 (2006) (citing *Ake v. Oklahoma*, 470 U.S. 68, 72, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985)).

If an attorney's performance is deficient, the next question is whether it caused prejudice. "Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) and citing *Strickland*, 466 U.S. at 694). "[A] 'reasonable probability' is lower than a preponderance standard." *Id.* (citing *Strickland*, 466 U.S. at 694; *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015)). "Rather, it is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694).

## B. *The Standard of Review for Trial Court Rulings on Ineffective Assistance of Counsel*

"[C]laims of ineffective assistance of counsel present mixed questions of law and fact." *Brett*, 142 Wn.2d at 873 (citing *State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000)). We review a trial court's factual findings made in the course of deciding an ineffective assistance issue for substantial evidence.[8] *See id.* (citing *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 410, 972 P.2d 1250 (1999) (citing RAP 16.14(b))). But we review "[t]he legal conclusions flowing from such findings and testimony . . . de novo." *Id.* at 873-74 (citing *State v. Davis*, 25 Wn. App. 134, 137 n.1, 605 P.2d 359 (1980)). Because the ultimate conclusion of whether counsel's performance was ineffective constitutes an application of law to established facts, it is "a mixed question of fact and law reviewed de novo." *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009) (citing *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001)); *accord Ornelas v. United*

---

[8] "'Substantial evidence' means evidence that is sufficient "'to persuade a rational, fair-minded person of the truth of the finding."'" *Blackburn v. State*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (quoting *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004))). "So long as this substantial evidence standard is met, 'a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.'" *Id.* (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)).

*States*, 517 U.S. 690, 696-97, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (applying same standard of review to ultimate conclusions of probable cause and reasonable suspicion because they involve mixed questions of law and fact).

Lopez argues that a different, more deferential, standard applies when the trial court grants (rather than denies) a new trial based on ineffective assistance of counsel. Lopez correctly observes that a trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion, *State v. Hawkins*, 181 Wn.2d 170, 179, 332 P.3d 408 (2014) (citing *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981)), but that we generally give greater deference to a trial court decision to grant a new trial than to deny one, *id.* (citing *State v. Brent*, 30 Wn.2d 286, 290, 191 P.2d 682 (1948)). He is also correct that trial courts generally have "wide discretion in deciding whether or not to grant a new trial" because "'the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge than can [appellate courts] from a cold, printed record.'" *Id.* (quoting *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)).

Those reasons and that deferential standard do not, however, apply to questions of law and mixed questions of law and fact. *See State v. Mohamed*, 186 Wn.2d 235, 240-41, 375 P.3d 1068 (2016) ("'Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial. . . .'" (quoting *Williams*, 96 Wn.2d at 221)). And that is precisely what we have

15

here. We therefore review the trial court's factual findings for substantial evidence and its legal conclusions de novo.

### C. There Is No Separate, Different Ineffective Assistance Test for Lawyers Suffering from Mental Illness

Lopez argues that the court should presume deficient performance when counsel is afflicted by mental illness. Pet'r's Suppl. Br. at 9 (citing U.S. CONST. amend. XIV). We disagree.

Lopez's argument is based on the notion that an attorney suffering from mental illness is categorically unable to provide effective representation. Lopez provides no evidence to support this notion, and we cannot find any support for it either. In fact, the rule we find is just the opposite: attorneys and judges may have disabilities of all kinds, mental as well as physical, but that alone does not disable them from practicing law or adjudicating cases. The ability to be an effective professional depends, instead, on the actual effect of the disability on the attorney's performance. *Dows v. Wood*, 211 F.3d 480, 485 (9th Cir. 2000) ("The mere fact that counsel may have suffered from a mental illness at the time of trial . . . has never been recognized by the Supreme Court as grounds to automatically presume prejudice."); *Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir. 1987) ("Rather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe it is more prudent to evaluate the attorney's

16

actual conduct of a trial in light of allegations of mental incompetence."); *Johnson v. Norris*, 207 F.3d 515, 518 (8th Cir. 2000) (declining to adopt a per se presumption of ineffective assistance of counsel when trial counsel suffers from mental illness (citing *Pilchak v. Camper*, 935 F.2d 145, 149 (8th Cir. 1991))). Indeed, there are many exceptionally talented lawyers who suffer from mental illness without causing harm to their clients. Br. of WACDL (Washington Association of Criminal Defense Lawyers) as Amicus Curiae at 5; *see* James T.R. Jones, *"High Functioning": Successful Professionals with Severe Mental Illness*, 7 DUKE F. L. & SOC. CHANGE 1 (2015).

This does not mean that evidence of counsel's mental health (or physical health) is irrelevant. When counsel's ability to adequately investigate, prepare, communicate, or present the client's case is impaired by disability, counsel's performance might well be deficient. The trial court therefore applied the correct standard when it stated that the proper focus is on the attorney's performance, not on the mere existence of a disability: "Really, the question is whether Mr. Witchley's handling of the entire case, including pretrial investigation and communications with

his client, may have been *adversely affected* by his mental health."[9] 11 VRP (Oct. 30, 2015) at 1311 (emphasis added).

---

[9] The concurrence in the dissent is concerned that this decision will create several problems. Those concerns lack foundation.

The first problem that it suggests is that this decision will allow attacks on convictions based on defense counsel's mental illness alone. But that is not what this opinion says; it says just the opposite: "[A]ttorneys and judges may have disabilities of all kinds, mental as well as physical, but that alone does *not* disable them from practicing law or adjudicating cases." *Supra* p. 16 (emphasis added).

The second problem that the concurrence in dissent suggests is that this decision creates a new rule allowing evidence of defense counsel's mental health to be admitted in ineffective assistance of counsel proceedings. But this opinion does not change the law on the admissibility of such evidence at all; in fact, it maintains the status quo. It adheres to the general rule that factual data within and outside the record is relevant to whether counsel's performance is deficient. Sometimes, that factual data involves evidence of defense counsel's health. *State v. Herron*, noted at 130 Wn. App. 1015, 2005 WL 2858080, at *1 (involving claim that defense counsel was under the influence of alcohol during trial proceedings); *Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (citing evidence that defense counsel had resigned from legal practice amid evidence that he had drank three or four alcoholic drinks on a number of occasions while on lunch recess during trial); *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 573, 397 P.3d 90 (2017) (Madsen, J., dissenting) (involving claim that defense counsel was functionally and mentally absent at trial due to old age and deteriorating health). That is because central to the deficient performance analysis is whether counsel had tactical reasons for acting or failing to act. Evidence that counsel failed to act because he or she "checked out" of the case for whatever reason (e.g., sleeping, mental health, drug use, alcoholism, or financial problems) is certainly relevant to rebut *Strickland*'s presumption that counsel had tactical reasons for failing to act.

The third problem that the concurrence in dissent suggests is that any inquiry into defense counsel's mental health would somehow violate the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, or be inconsistent with administration guidelines from the American Bar Association (ABA). The ADA prohibits employers and public entities from discriminating against individuals who have a physical or mental impairment. It does not prohibit courts from inquiring into whether an attorney's performance was impaired by a mental condition while representing a client. Nor does the

Thus, to prevail on his ineffective assistance of counsel claim, Lopez must prove that Witchley's performance was both deficient and caused prejudice. We review the trial court's factual findings related to these issues for substantial evidence. We review its conclusions of law, and its resolution of mixed questions of law and fact, de novo.

II.     The Trial Court's Factual Finding That Witchley's Performance before and during Trial Was "Severely Handicapped" by Depression Is Supported by Overwhelming Evidence; The Trial Court's Conclusion That This Constituted Deficient Performance Is Legally Correct

The trial court found that Witchley's pretrial investigation and trial performance was "severely handicapped" by his depression. *Id.* at 1315. This finding, the trial court explained, extended beyond Witchley's failure to present

---

ABA. The ABA's Resolution 102 urges legal licensing entities to focus their admission questions on conduct or behavior that impairs an applicant's ability to practice law in a competent, ethical, and professional manner rather than on the presence of any mental health diagnosis, which is exactly what we do in our ineffective assistance of counsel analysis in this case. AM. BAR ASS'N, RESOLUTION 102 (Aug. 2015), https://americanbar.org/content/dam/aba/images/abanews/2015annual resolutions/102.pdf Our analysis is focused on Witchley's conduct and failures at trial, though we have not ignored evidence of Witchley's deteriorating mental health either. But nothing in the ABA's resolutions or guidelines suggest that we should ignore mental health or substance abuse issues in our legal community. To the contrary, the ABA's Resolution 106 requires that we maintain an open discussion about mental health and substance use disorders. To that end, the ABA maintains a public database of attorney disciplinary cases involving mental health and substance abuse concerns. Am. Bar Ass'n, Case Law Reviews, https://www.americanbar.org/groups/lawyer_assistance/resources/case_law_reviews.html (last visited Jan. 19, 2018).

sexual morality and decency evidence since "the motion for new trial in this matter raises issues that go beyond simply the failure to call reputation testimony." *Id.* at 1311. According to the trial court, "Really, the question is whether Mr. Witchley's handling of the entire case, including pretrial investigation and communications with his client, may have been adversely affected by his mental health." *Id.* The trial court found that it was. *Id.* at 1315.[10]

The trial court made this finding after considering Sanderson's live testimony, Sanderson's written declaration, Witchley's transcribed and audio recorded interview, Witchley's written declaration, the letter written by Witchley's psychologist, and the trial court's own observations throughout trial proceedings. But the trial court did not enter any written factual findings and conclusions of law to explain that finding. The trial court did not do so because Lopez's second lawyer said he did not need them and the State did not request them. *Id.* at 1319. Instead, the trial court incorporated its oral ruling into its written order. CP at 350. We therefore review the trial court's oral ruling in conjunction with the record to determine whether the trial court's factual finding that Witchley's pretrial and trial

---

[10] We are unpersuaded by the State's attempt to narrow the trial court's finding to only Witchley's tardiness. Wash. Supreme Court oral argument, *State v. Lopez*, No. 94418-1 (Nov. 16, 2017), at 23 min., 20 sec. through 24 min., 39 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

20

preparation was severely handicapped by depression is supported by substantial evidence. We hold that it was.

First, we have the record of trial and pretrial proceedings. As discussed above, *supra* pp. 4-5, Witchley's failures to appear, failure to submit briefing, and apparent inability to follow simple court orders were clear from the record. They were also red flags for the judge, who tried to address these deficiencies as they arose but became convinced that his efforts did not work.

Next, we have the hearing on the motion for a new trial. Sanderson testified that Witchley identified several tasks as necessary for trial preparation. For example, he told her to investigate how busy the day care center's parking lot was. 11 VRP (Oct. 8, 2015) at 1293. He sought that evidence to undermine L.M.'s claim that Lopez molested her in such a busy area yet there were no witnesses. Witchley also asked Sanderson to compile evidence regarding L.M.'s reputation for lying. *Id.*

But Witchley completely "'checked out'" of Lopez's case before those tasks were completed. 11 VRP (Oct. 30, 2015) at 1312. Witchley failed to request additional OPD funding for Sanderson to complete that investigation, failed to show up for meetings with her so she could not help him develop the defense, and failed to return her messages so she could not tell him about the "important" case information she discovered. CP at 289. These examples support Sanderson's assertion that Witchley "checked out" of other necessary trial preparation and the

21

trial court's conclusion that this partial development of Lopez's case "severely handicapped" Witchley's performance at trial. Indeed, according to Sanderson, Witchley never followed through on trial exhibits he originally requested and other trial necessities.

Witchley's own statements also support the assertion that he "checked out" before the trial. Witchley acknowledged that he did not submit additional OPD funding requests because he "simply failed to appropriately prioritize submission of [the request]" "[f]or a variety of not-so-good reasons." *Id.* at 93. Clearly, those "not-so-good reasons" included his severe depression, which caused him to miss meetings with Sanderson to discuss the progress of her investigation, to not prepare trial exhibits and witness examinations, and to not view the day care center's parking lot. Notably, according to Sanderson, Witchley knew "'that he shouldn't have taken the case to trial and that he was not emotionally capable of working on it,'" 11 VRP (Oct. 30, 2015) at 1313, but "'didn't want to get off the case'" because "'he was financially dependent on Mr. Lopez's case,'" *id.* at 1312-13.[11]

---

[11] The State disputes whether Witchley ever admitted that he was not mentally equipped to represent Lopez at trial and that he was financially dependent on the case. Wash. Supreme Court oral argument, *supra*, at 36 min., 10 sec. through 36 min., 22 sec. But the State never contested this statement or Sanderson's credibility during the reference hearing. Even if the State had challenged Sanderson's credibility, our review of the trial court's factual finding is for substantial evidence to support that finding, not to make credibility determinations. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003).

We agree with the trial court that this fell well below prevailing professional norms and therefore constitutes deficient performance. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (Whether counsel's performance was deficient depends on "'prevailing professional norms.'" (quoting *Strickland*, 466 U.S. at 688)).

Neither Witchley nor the State provides any strategic or tactical explanation for Witchley's failure to conduct trial preparation that he himself deemed necessary when he was well. And there is no permissible strategic reason for failing to submit court-requested briefing, failing to procure payment for the investigator, and failing to show up for trial. To the contrary, Witchley acknowledged that Sanderson's investigative services were "necessary to [Lopez's] defense," CP at 92, and necessary for him to "adequately prepare[] for trial in this case," *id.* at 94.

We therefore conclude the trial court's factual findings about Witchley's deficiencies are supported by substantial evidence. We further agree with the trial court that these basic failures—including Witchley's failure to investigate, failure to prepare for trial, and failure to show up to court—"fairly obvious[ly]" meet the legal definition of "deficient performance."[12] 11 VRP (Oct. 30, 2015) at 1315; *see Yung-*

---

[12] The concurrence in the dissent misapprehends our holding. We do not affirm the trial court's finding of ineffective assistance based on Witchley's chronic tardiness or failure to submit invoices for payment. Rather, we affirm based on Witchley's many

*Cheng Tsai*, 183 Wn.2d at 100; *Boyd*, 160 Wn.2d at 434; *Punsalan*, 156 Wn.2d at 879. [13]

III. The Trial Court's Factual Finding That Witchley's Failures "Severely Handicapped" His Performance Is Supported by Substantial Evidence, and Its Implicit Conclusion That This Caused Prejudice Is Legally Correct

To prevail on a claim of ineffective assistance of counsel, a defendant must also show that counsel's deficient performance caused prejudice. *E.g.*, *Canha*, 189 Wn.2d at 377 (citing *Grier*, 171 Wn.2d at 32-33). The *Strickland* prejudice test "is ultimately concerned with 'the fundamental fairness of the proceeding whose result is being challenged.'" *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 844, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S at 696). "'In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial

---

failures: his failure to investigate, his failure to prepare for trial, and his failure to show up for court.

[13] Notably, we agree with the Court of Appeals that had the trial court based its finding of deficient performance solely on Witchley's failure to investigate reputation evidence, that finding would not be sustainable. We agree with the Court of Appeals that "counsel has . . . no duty to pursue strategies that appear unlikely to succeed, and no duty to anticipate changes in the law." *Lopez*, slip op. at 6 (citing *Brown*, 159 Wn. App. at 371-72). Even though there was an existing split among the Court of Appeals divisions regarding the admissibility of sexual morality and reputation evidence at the time of Lopez's trial, any appeal in Lopez's case would have been reviewed by Division One, which had already held that such reputation evidence is inadmissible. *Jackson*, 46 Wn. App. at 365.

process that our system counts on to produce just results.'" *Id.* A defendant must therefore show """a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different."'" *Canha*, 189 Wn.2d at 377 (quoting *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862)). But a "reasonable probability" is lower than a preponderance standard. *Strickland*, 466 U.S. at 694; *Estes*, 188 Wn.2d at 458. It "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The trial court said Witchley's performance "fairly obvious[ly]" "severely handicapped" the defense. 11 VRP (Oct. 30, 2015) at 1311, 1315. To the extent this is a factual finding about what really happened, it is supported by substantial evidence. Sanderson testified that Witchley defined the investigation necessary for the case before his illness overcame him. 11 VRP (Oct. 8, 2015) at 1293. She also explained that Witchley defined other necessary trial preparation, including the assembly of exhibits, before his depression "handicapped" him. She further explained that she knew the unfinished work was sufficiently "important" to Lopez's case based on her 15 plus years of work on criminal defense cases, including many cases with Witchley. She shared her contemporaneous concern about the importance of this unfinished work by leaving a voicemail, an e-mail, and text messages asking Witchley to call her back. CP at 289. And she explained that that work was never finished because Witchley "checked out" of the case—and there was no evidence

25

that he ever fully checked back in. *Id.* In addition, Sanderson never got around to collecting evidence regarding "[L.M.'s] propensity for lying or making up stories or exaggerating stories," 11 VRP (Oct. 8, 2015) at 1293, even though Lopez's entire defense theory at trial was that L.M. was lying. 10 VRP (Mar. 12, 2015) at 1198.

Sanderson's testimony corresponded with the trial judge's own contemporaneous observations of Witchley's performance (and failures) at trial. The trial judge observed firsthand Witchley's inability to follow through on simple tasks like submitting required briefing or waking up to come to court. *Supra* p. 5. The judge tried talking to Witchley, threatening him with financial sanctions, and eventually sanctioning him to correct the problem, but none of this worked. All of this evidence supports the trial court's factual finding that Witchley's trial preparation and performance was "fairly obvious[ly]" "severely handicapped." 11 VRP (Oct. 30, 2015) at 1315.

It also supports the trial court's implicit legal conclusion that this adverse effect amounted to prejudice. *Id.* at 1311-15. This case was not a slam-dunk case for the State. The outcome depended solely on the credibility of a six-and-a-half-year-old's contradictory report. The jury deliberated for over a day,[14] after a seven

---

[14] 10 VRP (Mar. 12, 2015) at 1211 (deliberation beginning around 12:36 p.m.); 10 VRP (Mar. 13, 2015) at 1212 (jury verdict at 2:03 p.m. the next day).

26

day trial.[15] The trial judge who heard and saw the same evidence as the jury expressly stated that "this was a close case" that "could have gone the other way." *Id.* at 1310. The trial court's assessment reflected Witchley's professional assessment as well. Witchley believed, based on his 25 years of experience as a criminal defense attorney, CP at 304, that this was a close case:

> I thought it-I really thought it was gonna be a hung jury is what I thought to tell you the truth, you know. No-um anyone's an idiot if they-any defense attorney is an idiot if they tell you that you're-they're gonna win. Any defense case can be lost[,] . . . includ[ing]-you know obviously including this one. But, I did think it had the hallmarks of a hung jury.

CP at 245-46.

Given the fact that the outcome of this case turned on L.M.'s credibility, that it was a close case, and that the serious deficiencies in Witchley's pretrial preparation and trial performance were clear and debilitating, we are convinced based on these unique facts that there is a reasonable probability of prejudice sufficient to undermine confidence in the outcome of Lopez's trial.[16]

---

[15] CP at 54-73.

[16] We reject Lopez's argument that he does not have to prove prejudice. The United States Supreme Court, in "*Cronic* [(*United State v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)),] recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Florida v. Nixon*, 543 U.S. 175, 190, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). This narrow exception applies when "'counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing,'" *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L.

27

CONCLUSION

We agree with the trial court that Witchley's pretrial and trial performance was deficient and that the deficiency caused prejudice. We therefore reverse the Court of Appeals and affirm the trial court's decision to grant a new trial due to ineffective assistance of counsel.

---

Ed. 2d 914 (2002) (quoting *Cronic*, 466 U.S. at 659), or the defendant "'is denied counsel at a critical stage of his trial," *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1375, 191 L. Ed. 2d 464 (2015) (quoting *Cronic*, 466 U.S. at 659). Although Witchley's pretrial and trial deficiencies were serious, they did not deprive Lopez entirely of a defense.

_____
George McCloud, J.

WE CONCUR:

_____      _____
Fairhurst, C.J.                Stephens, J.

                               _____
                               Wiggins, J.

_____
Madsen, J.

_____      _____

*State v. Lopez (Oscar Raul)*

No. 94418-1

JOHNSON, J. (dissenting)—This case involves review of a trial court's

decision to grant a new trial based on a claim of ineffective assistance of defense

counsel. The trial court identified two separate, independent grounds for granting

relief: (1) counsel's alleged failure to call certain witnesses to testify to the

defendant's good character for sexual morality in defending against a child

molestation charge and (2) counsel's alleged clinical depression. The Court of

Appeals reversed and reinstated the conviction. The majority correctly agrees with

the Court of Appeals holding that no independent Fourteenth Amendment to the

United States Constitution due process right to representation by counsel who is

not suffering from mental illness exists and that the *Strickland*[1] analysis controls.

However, in applying *Strickland*, the majority is impermissibly selective in its

reading of the record, mischaracterizing what occurred before and during trial. In

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

fact, the majority barely mentions, let alone analyzes, counsel's trial performance. Even more troubling is the majority's discovery in the trial court's oral ruling of an "implicit conclusion" of law, which it upholds as "legally correct." On the record before us, properly analyzed, no ineffectiveness exists.

The majority apparently believes that de novo review is a mandate to sidestep the deficiencies raised by Oscar Lopez and reached by the trial court, and to read "implicit" conclusions, which the trial court never articulated, into the trial court's ruling. The majority starts by announcing that the Court of Appeals "interpreted that finding [that trial counsel was severely handicapped by his depression] as relating solely to Lopez's per se prejudice/quasi-due process argument." Majority at 11. But the Court of Appeals correctly concluded that when the trial court stated in its oral ruling that

> even though the court finds it difficult to make any conclusions on a more probable than not basis as to what the result would have been had Mr. [Steven] Witchley been functioning at full capacity, it seems to the court that, *as a matter of due process*, a defendant is entitled to be represented by somebody who is not suffering from mental illness[,]

it meant exactly what it said. 11 Verbatim Report of Proceedings (VRP) (Oct. 30, 2015) at 1316-17 (emphasis added). The trial court, in discussing what effect, if any, Witchley's depression may have had on his representation of Lopez, stated:

> And I think the court should make it clear that in taking the mental health issues into consideration, that this is really not a *Strickland* analysis because under *Strickland*, the court would be required to actually find that as a result of Mr. Witchley's depression that [Lopez] was convicted essentially and that the result would have been different. That is a very difficult judgment call to make. Mr. Witchley, even despite his shortcomings, was a competent trial attorney for the most part, *except for the evidentiary issues*.

11 VRP (Oct. 30, 2015) at 1316 (emphasis added). It is evident from this statement that the trial court's finding at issue, i.e., that Witchley's handling of the entire case was severely handicapped by his depression, was not susceptible, in the eyes of the trial judge, to a *Strickland* analysis. Furthermore, it is evident that the trial court believed that the only *Strickland*-type deficiency raised by Lopez was the trial attorney's performance as to the evidentiary issues, and that his overall performance at trial was "competent." And the Court of Appeals correctly concluded, and the majority apparently agrees, that the evidentiary issues did not constitute deficient performance and further did not prejudice Lopez. As of the time of the trial, case law existed recognizing that ER 404(a)(1) evidence of a defendant's good reputation for sexual morality was not admissible. In *State v. Jackson*,[2] Division One explicitly held that evidence of a defendant's good reputation for sexual morality is not admissible in cases involving sexual offenses

---

[2] 46 Wn. App 360, 365, 730 P.2d 1361 (1986).

against children. Witchley's failure to "unearth" a potential divisional conflict and to anticipate or argue for a potential change in the law does not render his performance constitutionally ineffective.

The majority, however, goes on to conclude that the trial court made a factual finding that "Witchley's [f]ailures '[s]everely [h]andicapped' [h]is [p]erformance," and that that is what constitutes deficient performance by Witchley. Majority at 23. This does not make sense. Contrary to the majority's pronouncement that "the trial court did not enter any written factual findings and conclusions of law to explain *that finding*" because counsel said "he did not need them,"[3] the trial court did not do so because the deficiency it identified was only that Witchley was depressed and that "had he not been handicapped by his depression, he would have been *more effective*." 11 VRP (Oct. 30, 2015) at 1316 (emphasis added).

Even if we were to assume that the majority is drawing its own legal conclusions as to the deficient performance prong, the deficiencies it does eventually articulate—failure to investigate, failure to prepare for trial, and failure

---

[3] Majority at 20 (emphasis added). Lopez's second attorney simply stated that he did not object "to the court incorporating by reference its oral ruling since it was in detail." 11 VRP (Oct. 30, 2015) at 1319.

4

to show up to court—do not withstand even cursory scrutiny. When reviewing a claim of ineffective assistance of counsel, "we look to the totality of the circumstances, ever mindful of the fact that there exists a strong presumption that counsel rendered reasonably effective assistance." *United States v. Muehlbauer*, 892 F.2d 664, 668 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). Instead, the majority all but presumes Witchley's ineffectiveness based on the fact that he was suffering from depression at or around the time of trial.

In examining the deficient performance prong of *Strickland*, the majority relies heavily on trial counsel's investigator Karen Sanderson's statements about Witchley's mental state and actions. The majority fails to mention the fact that to the extent Lopez complains of trial counsel's failure to investigate in preparation for trial, no duty to investigate and call all available witnesses exists.[4] It fails to mention that Witchley did call eight witnesses at trial, and that the witnesses he allegedly failed to interview and call, and whom Sanderson perhaps was initially called upon to investigate, were, in Witchley's opinion, unnecessary because, as he explicitly advised Lopez, "[T]he fact that you don't molest child A is not relevant

---

[4] "Under the Sixth Amendment [to the United States Constitution], counsel is required to conduct a *reasonable* investigation." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 735, 101 P.3d 1 (2004). "Generally the decision whether to call a particular witness is a matter for differences of opinion." *Davis*, 152 Wn.2d at 742.

5

to prove that you didn't molest child B." Clerk's Papers (CP) at 227. The majority

fails to mention that Witchley, among other things, aggressively sought Lopez's

release pretrial, professionally litigated pretrial motions, and skillfully examined

and cross-examined witnesses. In short, the majority fails to consider all of the

circumstances the objective standard of *Strickland* commands. It does, however,

embellish Witchley's tardiness and assigns great weight to Witchley's

communications with Sanderson, but that proves nothing about counsel's actual

effectiveness. The *Strickland* focus is, and has always been, on counsel's function,

which, "as elaborated in prevailing professional norms, is to make the adversarial

testing process work in the particular case." *Strickland*, 466 U.S. at 690.

To the extent the majority finds any deficiency it identifies to constitute

deficient performance by itself under *Strickland* is unclear, as is whether it finds

deficient performance only by pooling piecemeal what it deems Witchley's "basic

failures" together. Majority at 23. To be clear, however, none of the "deficiencies"

the majority articulates, by themselves, or in their totality, are sufficient to meet the

first prong of *Strickland*. What the record shows is that Witchley did conduct a

reasonable investigation, including five critical witness interviews with

Sanderson's help: those of the complainant, the child's mother, the first responding

6

police officer, the defendant's wife, and the defendant's supervisor. Witchley had Sanderson photograph the parking lot and the church, i.e., the scene of the alleged crime. He subpoenaed documents from Truman Elementary School to establish Lopez's whereabouts on the day of the alleged incident. The record also shows, and the State correctly argues, that in the course of preparing for trial, Witchley was present for the State's interviews of all of the defense witnesses and litigated over 20 pretrial motions, with no claimed counsel deficiencies or severe handicap. The majority also points to Witchley's e-mailing the court to "'call[] in sick,'" 11 VRP (Oct. 30, 2015) at 1313, as well as his alleged absence before a different judge in support of its *Strickland* deficiency. While not commendable, attorney tardiness presumably may be more common than the majority would like to believe. The majority's conclusion that counsel's performance fell below an objective standard of reasonableness in light of all the circumstances without mentioning or analyzing the entirety of the trial court's factual findings, by selectively assigning weight to facts in the record and ignoring the attorney's actual trial performance, erroneously abandons the burden *Strickland* imposes.

Ultimately, the majority agrees with the trial court's decision to grant a new trial based on its "implicit legal conclusion that [the adverse effect of Witchley's

7

mental illness] amounted to prejudice." Majority at 24 (citing 11 VRP (Oct. 30, 2015) at 1311-15). This flies in the face of the trial court's own statement that it cannot "actually find that as a result of Mr. Witchley's depression that [Lopez] was convicted . . . and that the result would have been different."[5] 11 VRP (Oct. 30, 2015) at 1316. The Court of Appeals on de novo review correctly found that the trial court's conclusions of law were unsustainable, both as to its pronouncements pertaining to the admissibility of character evidence and as to the defendant's due process entitlement to counsel free from mental illness. Neither is supported by the facts in the record before us; neither is a sound legal conclusion to be drawn. While it may very well be that trial counsel was depressed, the majority's characterization of Witchley's deficiencies as "debilitating," majority at 25, is hard to reconcile with the trial court's characterization of that same performance as "competent," 11 VRP (Oct. 30, 2015) at 1316, and Sanderson's statement that despite Witchley's depressed state, once he "got to court, it was okay." CP at 291.

And even if Witchley's performance fell below an objective standard of reasonableness in light of all the circumstances, none of the other acts or omissions by Witchley the majority selectively relies on reaches the requisite level of

---

[5] The majority omits this statement by the trial court entirely.

8

reasonable probability of a different result for Lopez. The majority's legal analysis does little to clarify on what grounds it upholds the trial court's reasoning. To conclude that Lopez was prejudiced because "the serious deficiencies in Witchley's pretrial preparation and trial performance were clear and debilitating," majority at 26, is to employ circular reasoning. The majority's reliance on the close nature of the case is also unpersuasive in this context.[6] Perhaps the most troubling aspect of the decision the majority reaches today is that it requires our appellate courts to divine "implicit" conclusions in reviewing the trial courts' actions in

---

[6] To assert that there is a reasonable probability that but for instances of tardiness, failure to interview more witnesses whose testimony counsel deemed inadmissible to begin with, or failure to "develop the defense" that from the trial record appears to have been reasonably developed, the result of the proceedings would have been different because this was not a "slam-dunk" case is not a sound legal conclusion. Majority at 21, 26. Whether the majority views the strength or weakness of the State's case as a factor, the jury and not this court makes the final decision.

*State v. Lopez (Oscar Raul)*, No. 94418-1
(Johnson, J., dissenting)

order to avoid being overturned. We should affirm the Court of Appeals' well-

reasoned opinion.

No. 94418-1

YU, J. (concurring in dissent) — I agree with the concerns expressed by the dissent that the majority mischaracterizes the record in order to affirm a finding of deficiency for counsel's failure to offer evidence of Lopez's "good reputation" for sexual morality in a child molestation case when binding precedent held such evidence inadmissible. Dissent at 1, 3-4. I also agree that we should affirm the Court of Appeals' decision that the trial court erred in granting a new trial on the basis that counsel suffers from severe depression. *Id.* at 1. *Strickland*[1] requires an actual showing of deficient performance *and* prejudice, and the record in this case does <u>not</u> support either.

I write separately because I cannot find myself embracing a standard that permits constitutional ineffectiveness when counsel is chronically late or has not submitted invoices for payment. As a former trial court judge, I could list a host of other reasons lawyers routinely made trial management difficult for me, but none

---

[1] *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

1

go to the heart of the issue: effective representation of a client. To permit

behaviors like chronic lateness to be the basis for constitutional ineffectiveness, as

the majority does, is to dramatically lower our threshold for prejudice.

I also write to state my unease with shifting the inquiry of "ineffectiveness

of counsel" from a review of overall trial performance to a review of counsel's

mental health as *a measure* of performance. I refuse to accept the underlying

proposition that depression or some form of mental illness renders an attorney

incompetent, especially in hindsight. The majority paves the way for a per se rule

that permits inquiry into an attorney's mental health, including any history of

diagnosis and treatment, rather than focusing on his or her actual conduct or

performance. Lawyers should now expect that their mental health or personal

stress level will be part of an ineffectiveness and/or malpractice claim.

As noted in the State's answer to the Washington Association of Criminal

Defense Lawyers' (WACDL) amicus brief, asking lawyers about their history of

diagnosis or treatment likely violates the Americans with Disabilities Act of 1990,

42 U.S.C. §§ 12101-12213, and serves to perpetuate myths about mental illness.

Answer to WACDL Amicus Br. at 7.[2] In 2016, we amended the Admission and

---

[2] *See also* DISABILITY RIGHTS WASH., QUESTIONS OF DISCRIMINATION, http://stats.disabilityrightswa.org/questions-discrimination [https://perma.cc/N3PH-BH7J] (last visited Feb. 7, 2018).

Practice Rules to remove questions that target applicants who have sought

mental health treatment. It was a milestone in the fight for equality when we

focused the inquiry of fitness to practice law on the ability to perform essential

functions rather than on a knee-jerk reaction to disability status. It was an effort to

ensure that applicants are not barred because of a diagnosis or history, while still

prohibiting those who cannot perform the essential functions–even if due to a

disability–from practicing law. The unintended consequence of today's majority

decision is to shift that inquiry right back to disability status and make it center

stage.

I respectfully concur in the dissent.

_____ Yu, J.